UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW MONROE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-00787-JMS-KMB |
| ) | |
| MARTIAL KNIESER Doctor, ) | |
| DR. DUAN PIERCE, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Matthew Monroe, an inmate in custody of the Indiana Department of Correction ("IDOC"), brought this action alleging negligence and deliberate indifference claims against the defendants. Defendants have moved for summary judgment. Dkt. [70]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not

1

"scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Monroe and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.  The Parties

At all relevant times, Mr. Monroe was incarcerated at Pendleton Correctional Facility ("Pendleton"). Dkt. 70-1 at 17, 25. Dr. Knieser was a physician at Pendleton. Dkt. 70-2 at 1. Dr. Pierce was the Assistant Regional Medical Director. *Id.* at 2.

### B.  Mr. Monroe's Bowel Obstruction Treatment

On May 24, 2020, the Sunday before Memorial Day, Mr. Monroe visited the medical unit at Pendleton at 12:48 PM complaining of labored breathing and severe abdominal pain and indicated he believed he had a bowel obstruction. Dkts. 32 at 2, 70-1 at 9, 70-3 at 3. He had been diagnosed with Crohn's Disease in 1995 and had a long history of multiple bowel obstructions,

including requiring bowel resection surgery. Dkt. 70-1 at 23, 31-32, 36. However, most of the obstructions resolved with bowel rest and IV medication and fluids. *Id.* at 32-37. At the May 24 12:48 PM visit, the nurse gave him IV fluids. Dkt. 70-3 at 3. Mr. Monroe was then again seen by a nurse at 6:26 PM, who noted Dr. Knieser was called when Mr. Monroe felt no improvement from the fluids. *Id.* at 5. Mr. Monroe was given tramadol in pill form, which the nurse commented "seemed to improve" Mr. Monroe's pain, and his IV was discontinued. *Id.* At this time, Mr. Monroe only had bowel sounds in the left upper quadrant. *Id.*

Shortly after midnight, On May 25, Mr. Monroe was again seen by a nurse. *Id.* at 6. He was requesting pain medication and this nurse also commented that Mr. Monroe stated the "[p]ain is better after receiving med[ication] earlier." *Id.* Dr. Knieser was called to notify him of Mr. Monroe's status. *Id.* A new order of tramadol pills to be taken every six hours was placed, and the nurse noted that Mr. Monroe was to be observed for every shift during med pass until the morning of May 26, when he was to be assessed. *Id.*

On May 26, at 11:00 AM, Dr. Knieser saw Mr. Monroe for a provider visit. *Id.* at 9-10. Dr. Knieser states, and Mr. Monroe's medical records indicate, that at this same time Dr. Knieser also ordered an abdominal x-ray for him. *Id.* at 8; dkt. 70-2 at 2. Mr. Monroe contends that after he left that visit and received IV fluids, he saw the x-ray technician and requested the x-ray himself, but he admits it is possible Dr. Knieser could have already placed the order in the system by that time. Dkt. 70-1 at 60-61. It is undisputed that after viewing the x-ray results, Dr. Knieser ordered Mr. Monroe be transferred to an outside hospital. *Id.* at 61, dkts. 70-2 at 2, 70-3 at 12.

Mr. Monroe's hospital admissions paperwork states that the emergency room conducted a CT scan of his abdomen and pelvis that revealed a small bowel obstruction. Dkt. 70-3 at 14. Surgery was consulted, but Mr. Monroe "actually look[ed] good overall," did not appear to be in

3

pain, did not have a fever, and was "actually asking for food." *Id.* at 14, 17. The nurse practitioner noted the plan was to "order IV pain medications and antiemetics" and mild IV fluids. *Id.* at 17. Ultimately, Mr. Monroe recovered with bowel rest and IV fluids, returning to Pendleton on May 28, 2020. Dkt. 70-1 at 67.

## III.
## Discussion

### A. Personal Responsibility

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

Mr. Monroe brought his claims against Dr. Pierce, alleging he was deliberately indifferent to his medical care by delaying his treatment, because he had been told Dr. Pierce stopped his emergency transportation to the hospital on May 26, 2020. Dkt. 70-1 at 26. However, he admits that he never spoke to Dr. Pierce himself or overheard any conversations with Dr. Pierce. *Id.* at 26-27 ("No. I admit that the allegation against Dr. Pierce is hearsay from Dr. Knieser."). Dr. Knieser testifies that he "do[es] not recall speaking with Dr. Pierce, the Assistant Regional Medical Director, prior to making the decision to send Mr. Monroe for off-site medical treatment." Dkt. 70-2 at 2. Further, both Dr. Knieser and Dr. Pierce testify that Dr. Knieser had the authority to order such transportation without approval. *Id.*; dkt. 70-4 at 2. Indeed, Mr. Monroe has failed to designate any evidence that Dr. Pierce was involved in any of his medical treatment in May 2020, let alone the decision on when to transfer him to the hospital on May 26. Accordingly, based on the record before the Court, Dr. Pierce is entitled to summary judgment.

4

## B. Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Monroe's bowel obstruction was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Dr. Knieser acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to Mr. Monroe's health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Monroe "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted). The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996));

- refuses "to take instructions from a specialist." *Id.*;

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30;

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10); or

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Mr. Monroe contends several of Dr. Knieser's treatment decisions between May 24 and May 26, 2020, evince deliberate indifference.

First, Mr. Monroe asserts, based on his experiences and previous instructions given to him by doctors, that he was not properly placed on bowel rest because he believes it requires not having anything enter your bowels, including food, water, and medication in pill form, but he was given tramadol in pill form. Dkt. 70-1 at 55. In further support of his argument, he cites to a medical document from the hospital that states he was not taking anything by mouth,[1] and thus unable to take one of his oral medications, Imuran. Dkt. 75-1 at 30.

However, nothing in the document indicates his restriction from taking Imuran is related to his bowel rest; it is primarily a report regarding the early plan for his care, stating "Surgery is on board and following" and detailing the rationale for not prescribing steroid use at that time. *Id.* Moreover, Dr. Knieser testifies that "[a] rested bowel does not mean oral medications cannot be

---

[1] The document states that Mr. Monroe was "n.p.o." The Court takes judicial notice that "n.p.o" is a medical abbreviation for "*nil per os*" or "nothing by mouth" and typically refers to the instruction to avoid food or drink, but can sometimes also include refraining from oral medications. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8191764/ (last visited Sept. 9, 2024).

provided." Dkt. 70-5 at 12. There is nothing in the record that indicates Dr. Knieser acted subjectively indifferent, persisted in treatment he knew was ineffective, or departed substantially from accepted medical practice in providing Mr. Monroe with oral medication during his bowel rest.

Second, Mr. Monroe argues Dr. Knieser was deliberately indifferent when he delayed his in-person assessment of Mr. Monroe until he was scheduled to be back in the office. Mr. Monroe first presented to the medical unit complaining of abdominal pain on Sunday, May 24, 2020. Dkt. 70-3 at 3. Dr. Knieser was not present at the facility that day or the next, as Monday was a holiday. Dkt. 70-1 at 81. He first personally assessed Mr. Monroe on Tuesday, May 26. Dkt. 70-3 at 9-10.

However, Mr. Monroe was seen and treated by nursing staff, who were communicating to Dr. Knieser during each visit, numerous times throughout the weekend. Dkt. 70-3 at 3, 5, 7. Based on their status updates, Dr. Knieser continued to order IV liquids and pain medication for Mr. Monroe as his status changed. *Id.* Dr. Knieser testifies, and the record reflects, that the "nursing staff on-site were competent to continue providing care and were able to follow [his] instructions without additional oversight" and that he "remained accessible to on-site staff by phone for any questions, reports or additional consultations." Dkt. 70-5 at 11. Relying on nursing staff to follow physician instructions while treating patients is not indicative of deliberate indifference.

Third, Mr. Monroe claims that Dr. Knieser delayed ordering an x-ray of his abdomen. He asserts that after Dr. Knieser conducted an in-person assessment, he sent him to the nursing staff to get more IV fluids because Mr. Monroe indicated he was dehydrated. Dkt. 70-1 at 59. Afterwards, the nursing staff told Mr. Monroe he was going to be sent back to his housing unit. *Id.* at 60. However, as he was leaving, he saw the x-ray technician and requested an abdominal x-ray

7

himself. *Id.* Only after the technician performed the x-ray and brought the results to Dr. Knieser was Mr. Monroe sent to the hospital. *Id.* Dr. Knieser states that he did order the x-ray, in order "to check the fluid levels in the abdomen." Dkt. 70-2 at 2. Mr. Monroe concedes that "the nurses could have told me to go back when they was [sic] supposed to give me the x-ray." Dkt. 70-1 at 61. However, because the nursing staff was going to send him back to his unit, he assumes that Dr. Knieser "backdated" the x-ray order form. *Id.*

Mr. Monroe's IDOC medical records include a date and time of the visit, as well as a date and time the document was generated. For example, Mr. Monroe's first nurse visit occurred on May 24, 2020, at 12:48 PM. Dkt. 70-3 at 2. However, the comments section notes the comments were a "LATE ENTRY NARRATIVE NOTE." *Id.* at 3. This is supported by the date the document was generated, which was May 27, 2020, at 12:48 PM. *Id.* According to his IDOC medical records, Mr. Monroe's provider visit with Dr. Knieser on May 26, 2020, began at 11:00 AM. *Id.* at 9. The x-ray order form was signed by Dr. Knieser the same day at 11:05 AM. *Id.* at 8 (ordered time is listed as 11:00 AM while the document generated time is listed as 11:05 AM). Further, Dr. Knieser generated his provider visit notes at 11:27 AM. *Id.* at 11. Those notes indicate that his assessment plan included "get[ting] flat plate of abdomen for fluid levels."[2] *Id.* at 10.

The record does not support Mr. Monroe's assumption that Dr. Knieser did not order his x-ray. While medical records do not constitute an indisputable objective record of medical treatment, and thus are not entitled to any more weight than Mr. Monroe's testimony, *see Pritt v. Correct Care Sols.*, No. 1:17-CV-02664-JPH-MPB, 2020 WL 2840027, at *2 (S.D. Ind. June 1, 2020); *Lemond v. Talbot*, No. 2:17-CV-00113-WTL-DLP, 2018 WL 2938496, at *4 (S.D. Ind. June 12, 2018)

---

[2] The Court takes judicial notice that "[a] kidney, ureter, and bladder (KUB) X-ray is also known as a 'flat plate of the abdomen x-ray,' [and] may be performed to assess the abdominal area for causes of abdominal pain, or to assess the organs and structures of the urinary and/or gastrointestinal (GI) system." https://choc.org/programs-services/urology/kidney-ureter-bladder-x-ray/ (last visited September 9, 2024).

("Observations recorded in a medical record are entitled to no more weight than observations recorded in an affidavit for purposes of resolving a summary judgment motion."), his concession that Dr. Knieser could have ordered the x-ray and that his belief that Dr. Knieser did not is merely an assumption. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). That assumption, coupled with the record evidence of his timestamped medical records and Dr. Knieser's testimony, is insufficient to create a genuine issue of material fact. No reasonable jury could find, based on the record, that Dr. Knieser did not order the x-ray, or delayed the ordering of the x-ray after assessing Mr. Monroe, and thus he could not be found to have acted deliberately indifferent in causing any such delay.

Fourth, and last, Mr. Monroe contends that Dr. Knieser was deliberately indifferent in delaying sending him to a hospital. Mr. Monroe testified that "Dr. Knieser violated [his] rights by leaving [him] in that pain, suffering through three days." Dkt. 70-1 at 26. "Persisting in treatment known to be ineffective can constitute deliberate medical indifference, provided that the doctor was subjectively aware that the treatment plan was ineffective." *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021). However, nothing in the record indicates that Dr. Knieser subjectively believed his treatment between May 24 and May 26, 2020, was ineffective.

As noted above, he consulted with nursing staff regarding Mr. Monroe's status throughout the weekend and provided treatment instructions as his status changed. Dkt. 70-3 at 3, 5, 7. Mr. Monroe's medical records indicate that the nursing staff reported to Dr. Knieser that his condition improved after receiving pain medication on two separate occasions. *Id.* at 5, 7. Upon returning to the facility on May 26, Dr. Knieser personally assessed Mr. Monroe, ordered IV fluids, ordered an x-ray, and ordered Mr. Monroe be transported to the hospital for additional imaging.

9

*Id.* at 8-12; dkt. 70-2 at 2. While it was ultimately determined that Mr. Monroe needed to go to the hospital, nothing in the record indicates that Dr. Knieser was subjectively aware of any reason for such a transfer prior to May 26. Accordingly, he is entitled to summary judgment.

### C. State Negligence Claims

Mr. Monroe also brought state medical negligence claims. In evaluating those claims, the Court must apply Indiana law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019). An Indiana medical malpractice claim has "three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure [of the defendant] to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Whitfield v. Wren*, 14 N.E.3d 792, 797 (Ind. Ct. App. 2014) (internal quotation marks and citation omitted).

The defendants argue they are entitled to summary judgment because Mr. Monroe did not designate any admissible expert testimony and, further, his experts are not qualified to give testimony regarding his medical condition, causation, or the applicable standard of care. Dkt. 71 at 9-15. Mr. Monroe designated LPN Sarah Tackett, Dr. Johnny Bates, Dr. Brenda Ellis, Dr. Michael Berg, and Dr. Paul Gabriel as experts. Dkt. 70-6. He provided an affidavit from LPN Tackett, as well as testimony provided by the doctors that was given in *Johnson v. Naphcare, Inc.*, No. 3:19-cv-054, 2022 WL 306981 (S.D. Ohio Feb. 2, 2022). Regarding the competency of his experts to testify about his particular care, Mr. Monroe concedes they cannot offer an opinion. Dkt. 75 at 1-2 ("Defendants ask how any of the expert witnesses can offer [an] opinion as to the on-site care of Plaintiff. They cannot[.]"). Rather, Mr. Monroe "only seeks for them to provide this Court medical knowledge of the seriousness and risks of bowel obstruction in

10

general terms." *Id.* at 2.

Mr. Monroe's concession that his experts cannot testify regarding his particular care is fatal to his negligence claim. "In a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury." *Clarian Health Partners v. Wagler,* 925 N.E.2d 388, 392 (Ind. Ct. App. 2010) (citation omitted). As Mr. Monroe has conceded that none of his proposed expert witnesses have reviewed his medical records, dkt. 70-1 at 72, 75, so none of their proposed testimony could be based on "sufficient facts or data" to support a conclusion that the defendants' care was negligent or that it proximately caused any injury as required by Federal Rule of Evidence 702(b). Accordingly, the defendants are entitled to summary judgment on this claim.

## IV.
## Conclusion

The defendants' motion for summary judgment is **GRANTED**. Dkt. [70]. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 9/10/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

MATTHEW MONROE
936665
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box A
NEW CASTLE, IN 47362

All Electronically Registered Counsel